IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBRA CARPENTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-391-STE |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

### I.   PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for supplemental security income. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 129-138). The Appeals Council

remanded the case and a second administrative hearing was held. (TR. 83-107, 143-147). Following the second hearing, an ALJ issued a second unfavorable decision. (TR. 10-24). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the second decision of the ALJ became the final decision of the Commissioner.

## II.  THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. See Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 12, 2016, the application date. (TR. 13). At step two, the ALJ determined that Ms. Carpenter had the following severe impairments: chronic obstructive pulmonary disease (COPD); arthralgia of the right shoulder; affective disorder; and post-traumatic stress disorder. (TR. 13). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 13).

At step four, the ALJ concluded that Ms. Carpenter retained the residual functional capacity (RFC) to:

> [P]erform medium work as defined in 20 CFR 416.967(c) except the claimant can have occasional overhead reaching with the right arm. The claimant should avoid concentrated exposure to fumes, odors, and gas, along with concentrated exposure to chemicals. She should also be limited to simple, routine, repetitive tasks and only occasional interaction with public, coworkers, and supervisors.

(TR. 15).  The ALJ also concluded that Ms. Carpenter was unable to perform any of her past relevant work. (TR. 22).

At the administrative hearing, the ALJ presented these limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 59-60). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles (DOT). (TR. 60). At step five, the ALJ adopted the VE's testimony and concluded that Ms. Carpenter was not disabled based on her ability to perform the identified jobs with the RFC found at step four. (TR. 23-24).

## III.  STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

**IV.     ISSUE PRESENTED**

Ms. Carpenter alleges a lack of substantial evidence to support the ALJ's RFC determination. (ECF No. 14:3-8).

**V.     LACK OF SUBSTANTIAL EVIDENCE TO SUPPORT THE ALJ'S USE OF THE RFC ASSESSMENT AT STEP FIVE**

The Court concludes that the ALJ's use of Plaintiff's RFC at step five lacks substantial evidence and remand is appropriate.

### A.     Use of the RFC at Steps Four and Five

The RFC is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Social Security Ruling 96-8p, TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 1996 WL 374184, at *2 (July 2, 1996). Although a single RFC determination is made, the RFC is utilized twice during the sequential evaluation process. At step four, where the claimant retains the burden of proof, the RFC is used to determine whether an individual is able to do past relevant work. *Id.*; *see Grogan v. Barnhart,* 399 F.3d. 1257, 1261 (10th Cir. 2005). At step five, where the burden of proof is on the Commissioner, the RFC is used to determine whether an individual is able to do other work, considering his or her age, education, and work experience. SSR 96-8p, 1996 WL 374184 at *2; *Grogan v. Barnhart*, 399 F. 3d at 1261. In utilizing the RFC at step five, the ALJ must assess the individual's

capacity to perform each function within a given exertional level in order to decide which exertional level is appropriate. *Id.* at *3.

### B. The ALJ's Use of the RFC Assessment at Steps Four and Five

At step four, the ALJ determined that Ms. Carpenter could perform "medium" exertional work. (TR. 15). The ALJ recognized that Plaintiff suffered from severe arthralgia of the right shoulder, but that any pain associated with the impairment was accommodated by limiting Plaintiff to "medium" exertional work. *See* TR. 13, 20. "Medium" work, in turn, is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). Additionally, at step four, the ALJ concluded that Plaintiff had met her burden to prove that she could not perform any of her past relevant work. (TR. 22).

At step five, the ALJ utilized Plaintiff's RFC to conclude that she could perform three jobs in the general economy, which are classified at the "medium" exertional level. *See* TR. 23; DOT #920.587-018 (hand packager); DOT #361.687-018 (laundry bundler); DOT #318.687-010). Ms. Carpenter contends that the RFC, as utilized at step five, lacks substantial evidence because:

(1) the record is devoid of any evidence that Plaintiff could lift and/or carry up to 50 pounds; and

(2) the ALJ failed to explain his determination that Plaintiff was capable of performing such exertional requirements. (ECF No. 14:3-8).

The Court agrees.

### C. Relevant Medical Evidence and Testimony

The administrative record contains only three sources of information which could arguably relate to the ALJ's determination that Ms. Carpenter could perform "medium" work based on her shoulder impairment:

(1) medical records from 2013 reflecting treatment for the right shoulder injury and related pain;

(2) a 2016 consultative physical examination; and

(3) Plaintiff's testimony that she could only lift 5-10 pounds.

(TR. 58, 420-432, 477-481). The 2013 evidence indicated complaints for shoulder pain, including tenderness along the right scapular border, and treatment in the form of medication. *See* TR. 420-425, 477-481. In 2016, the consultative examiner assessed Plaintiff with a right shoulder injury, but noted that she exhibited a normal range of motion without pain to the shoulder during the examination. (TR. 427-428). And at the first administrative hearing, Ms. Carpenter testified that she could lift only 5-10 pounds. (TR. 58).[1]

### D. The Step Five Determination Lacks Substantial Evidence

The parties' arguments, in defense of their respective positions, turn on the burden of proof. Ms. Carpenter argues that the ALJ failed to sustain his burden of proof at step five because the record was devoid of proof that she was capable of performing the lifting

---

[1] Although Plaintiff's testimony was at the first administrative hearing, the ALJ obviously deemed it relevant as he considered it in formulating the RFC in the second decision. *See* TR. 16.

and carrying requirements associated with the "medium" jobs that the ALJ relied on. (ECF No. 14:3-8). The Defendant, on the other hand, argues that Plaintiff failed to meet her burden to establish that she could not perform the exertional requirements of "medium" work. (ECF No. 18:6-10). Because the case was resolved at step five, where the Commissioner retained the burden of proof, the Court sides with Ms. Carpenter.

As stated, at step five, the burden of proof was on Mr. Saul to prove that Ms. Carpenter could perform the exertional demands of "medium" work. *See supra*. To meet this burden, the ALJ may not rely on the absence of evidence or the absence of contraindication in the medical record to support his conclusion that the claimant retains the RFC to perform jobs than her past relevant work. *Thompson v. Sullivan*, 987 F.2d 1482, 1491 (10th Cir. 1993). To do so would effectively shift the Commissioner's burden at step five back to the Plaintiff. *Id.* But here, that is precisely what the ALJ did. In concluding that Plaintiff could perform "medium" work, the ALJ cited Plaintiff's "conservative" treatment for the shoulder pain (without explanation) and an absence of evidence relating to the shoulder impairment after 2013. (TR. 20). It is true that the Commissioner's step five burden does not require the agency to address or assess exertional requirements for which the medical record provides no evidence of an impairment or limitation. *Rutledge v. Apfel*, 230 F.3d 1172, 1175 (10th Cir. 2000). However, the ALJ clearly believed the record contained evidence of Plaintiff's right shoulder impairment severe enough to warrant ordering a consultative examination. *See supra*. Because the case was decided at step five, it was the Commissioner's burden to

prove, supported by substantial evidence, that Ms. Carpenter could perform the 50-pound lifting/carrying condition required by the jobs identified at step five. The record contained no evidence to support such finding and the ALJ simply failed in this regard by summarily concluding otherwise.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision.

ENTERED on January 27, 2021.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE